May it please the Court, my name is Hagida Luhl, I represent the Plaintiff Appellant Rhonda Gillette Netting on behalf of her two minor children, Juliet and Pierce Netting. I would like to reserve one minute rebuttal time if I may, Your Honors. Rhonda and Robert Netting wanted children and tried throughout their marriage to conceive children. In fact, I think we probably all know the facts, it's a fairly interesting issue, but we know what the problem is, whether a child conceived after the death of the father is a child eligible for benefits under the statute. Certainly, Your Honor, I'll get to the relevant provisions. The Commissioner is arguing that under the Social Security Act, these two seven-year-olds are not children. This defies the plain language of the Act, as well as common sense. The Netting children are entitled to benefits because first, they are children under the Act, and second, they are deemed dependent as either legitimate children or children entitled to intestate inheritance. Well, let me ask you this. Are they deemed dependent as of the time of death under the language in the federal statute? That's correct, Your Honor. They're deemed dependent as of the time of death. Without looking at the state law? It does depend on Arizona state law. Why is that? Because under the statute, they either need to be legitimate children or children entitled to intestate inheritance. The Act does not define who is a legitimate child, and therefore, the courts, including the Supreme Court, have looked Is there any contention that they're illegitimate? The Commissioner is claiming that they are illegitimate, yes. So you look to the Arizona statute simply to determine whether they're illegitimate under Arizona law? Or legitimate. Or legitimate, or whether they're entitled. But there is no such thing as illegitimate. That's correct, Your Honor. So what else is there under Arizona law? There is only legitimate children under Arizona law. Arizona has made the decision to abolish illegitimacy as a class. But that's the only reason we need to look to Arizona law under at least your first theory. That's correct, Your Honor. To see whether they are legitimate for purposes of the statute, the federal statute. That's correct, Your Honor. In the alternative, they would also be deemed dependent because they're children entitled to intestate inheritance under Arizona law. And again, in this regard, Arizona is very broad and straightforward. The relevant provision states that for the purpose of intestate inheritance, a person is the child of its natural parents. Now, of course, there's no dispute that these children are the natural children of Robert Netting, natural meaning biological children as understood by the courts. Therefore, they are entitled to intestate inheritance. Let me ask you, under your theory that every child is legitimate, what if a donor of sperm died, the sperm was subsequently used with a third party? I see, a party that they weren't married to? Not married to, yeah. Arizona law has a special provision regarding anonymous sperm donors or sperm donors who are not married. And it states that married sperm donors will be considered the natural parents and have all the legal obligations associated with natural parentage. However, anonymous sperm donors are relieved of those obligations. So under that theory, under Your Honor's hypothetical, the anonymous sperm donor would be not considered the natural parent in that specific scenario, which of course is not the case here. It doesn't have a statute that deals directly with sperm donors. I'm sorry, Your Honor? A state that doesn't have a statute that deals directly with sperm donors. What would be the outcome in that case? I suppose the state just said children are legitimate. There is no such thing as illegitimate children anymore. Well, I suppose in that scenario, then if you could ascertain the paternity, although usually states have laws to protect anonymous sperm donors, but if you could ascertain the paternity, then those children would be legitimate. However, most states aren't as broad as Arizona with respect to legitimacy law and actually have certain paternity requirements that children must meet if they are born outside of the context of marriage. For example, they may have to get a court-ordered paternity decree. So most states haven't abolished the distinction between legitimacy and illegitimacy. So turning back to my argument- I'm trying to see, is there a way that your argument is not limited in any way to after-born children born into a marriage? No, Your Honor. In Arizona, it wouldn't make a difference whether they were born into marriage or outside of a marriage. That's correct. It was outside of a marriage because I thought under Arizona law, marriage ends at death. That's correct, Your Honor. Technically, although they were originally married and had tried to conceive, but I imagine Your Honor's addressing maybe where there's partners or people that haven't taken the step of actually getting married, what would be their rights in that specific scenario. And under Arizona law, it doesn't make a difference because Arizona has decided to abolish that distinction between legitimate and illegitimate, and also abolish the distinction among intestate inheritance laws with respect to marriage. And turning to the intestate inheritance laws, the commissioner argues that the after-born heir statute specifically excludes these children from benefits, but that's not the case. The after-born heir statute contains no explicit restriction that a child be conceived prior to death. And in fact, Arizona had previously had such a statute and amended it. And in place of that statute, adopted the current one, which the only requirement is that a child survive 120 hours after its birth in order to get inheritance rights. The purpose of this statute is to expand the scope of inheritance, not restrict it as the commissioner would argue. And because it has been repealed, the court should not impute a pre-death conception requirement. In fact, the two other courts to consider this issue have both decided that posthumously conceived children should be entitled to benefits, and that's both the Massachusetts Supreme Court in the Woodward case and the New Jersey Superior Court in the Khaleesi case. The courts in both of those, in examining the rights of posthumously conceived children, had looked to state policies and how they treated the children and determined that, like Arizona, those states aim to be inclusive with children and treat all children equally and not create artificial distinctions among children. So the netting children here are children under the Act, whether you define a child biologically or even, as the commissioner argues, which is not correct, if you define a child with respect to only intestate inheritance laws. And in addition, they're also deemed dependent first as legitimate children and then, as an alternative basis, as children entitled to intestate inheritance. If I may point out, the commissioner tries to read out the legitimacy portion of the Act and claims that in order to be a child and in order to be deemed dependent, you would have to meet intestate inheritance requirements. This conflicts not only with the plain structure of the Act, which states that children are defined in Section 416E and legitimate children in Section 402D3 are entitled to benefits, but it also conflicts with this Court's interpretation of the Act and the Supreme Court's interpretation of the Act, which makes clear that children are entitled to benefits if they are legitimate, regardless of intestate inheritance rights. And in fact, the commissioner's own internal guidelines similarly apply the Act, not the regulations, but the Social Security Handbook. The section that the commissioner relies on, 416H2, like all the 416H provisions, are aimed simply at expanding the scope of the Act to bring in the reach of the statute and should be interpreted like that by the Court, by this Court, as it has been by prior courts. I see I'm out of time, so if the Court can... We'll give you time for rebuttal. Okay. Thank you. May I please the Court, Sharon Swingle from the Department of Justice. With me today is Karen Avalese from the Social Security Administration representing the commissioner. Our counsel in her briefs in that her argument has gone almost directly to the dependency prong of the requirements for survivor's benefit, but as we point out in our briefs, and I want to emphasize here today, that skips right over the preliminary inquiry about whether the children satisfied the statutory definition of child under the Act. And under the plain language of the provisions of the Act, as well as the implementing regulations, it is clear that they do not. 416E provides that a child is the child or adopted child, and 416H goes on to further define and govern the terms of that definition. As this Court is well aware, three of the four tests it sets out, actual support and invalid marriage ceremony, et cetera, cannot be satisfied, meaning that the sole test left available to the Netting children is to be able to take as intested heirs of Mr. Netting. Under Arizona law, however, an intested heir must be surviving at the time of the decedent's death. And I think it is crystal clear that the children who were not conceived for approximately nine months after Mr. Netting's death did not survive Mr. Netting. Is there any case that supports your position in Arizona? There is no case either way, Judge Fletcher. This is obviously a rather unique area of law, and it is obviously at the forefront of reproductive technology, but at the time that the Arizona statutes were last modified governing intestacy, I would point out in vitro fertilization was a known technique. There had been a uniform act proposed which would have governed intestate succession and other inheritance rights for children born and conceived posthumously, and Arizona did not adopt. Do you suggest that we certify this to the Arizona court? Well, with all due respect, we think it's completely unnecessary, and I note that our opposing counsel agrees, because there is an express survivorship requirement and because any ambiguity in that survivorship requirement is eliminated by the further exception for children in gestation, we don't think there is any room to interpret Arizona law to govern children conceived posthumously. But we would agree that if there is doubt about the appropriate interpretation of that state law, one mechanism for resolving it would be certification. Assuming, that is, that we have to reach that question, which your opponents, I think, contend we don't need to reach. Well, our opponents appear to believe that there is no such statutory requirement of being a child, Your Honor, something that we cannot, frankly, square with the plain language of the statute, and something that they themselves appear to recognize is flatly inconsistent with the terms of the governing formal regulations that apply in this case. Well, it seems to me it does say, it says a child may not be very artful. The term child means the child, or a legally adopted child of an individual, and it goes on to a stepchild, a grandchild. So they seem to think that everybody would know what a child is. It's not such a hard proposition, according to whoever wrote this statute. And a child born to two children, to two parents, would be a child, as opposed to an adopted child. They seem to think that the term child means somebody born to two people. I think if Section 416 stopped with subsection H, that might be an argument that had some... With subsection E. E, that might be a feasible argument. Unfortunately, it goes on to add in subsection H that for purposes of the subchapter, a child is defined as, et cetera, et cetera, and setting out four ways of being a child that are clearly intended to be exclusive. And I take that not only from the plain language of H2A, which says in determining whether an applicant is the child, et cetera, the commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property, but also from the remaining exceptions, which say that if an applicant is a son or daughter of a fully or currently insured individual, but is not the child of such insured individual under subparagraph A, nevertheless, you can qualify as a child by meeting certain other requirements. If any... This would seem to be for problems that might have arisen when you didn't deal with them previously. This would appear to supplement the ones that are obvious children. With all due respect, Judge Reinhart, I cannot agree, because if it was meant to be exclusive, the additional requirements in H2B and H3 would be superfluous, because every biological son or daughter would qualify as a child without meeting the additional requirements imposed by those subsections. So in essence, appellant's interpretation would read out those requirements from the statute. Scalia, we would only apply to people who did not have a legitimate marriage. I'm sorry, Your Honor? B would seem to cover people who might be deemed illegitimate, because they did they went through a marriage ceremony that didn't really make it. But H2 does not turn in any way on legitimacy. Well, that's the question of what do they mean when they're talking about a child who's born or a child who's adopted. Then they go on in H to say, well, if your marriage wasn't really valid, you're still the child of those people. Yes, Your Honor, except the child and the definition of child do not in any way turn on one's status as legitimate or not. The only thing that turns on legitimacy under the statutory terms is dependency, not one's status as a child. And H2 is intended to define child and only child. So I'm not quite sure that that can be correct, in that the only application of H2 is for defining child, not legitimacy. Legitimate is not defined in the Act, and it is not except for the cross-reference to the antestasy and subsequent provisions further elaborated. And that would, I mean, what the Commissioner has done, because the second requirement of dependency under the statute does also, as with the initial requirement of being a child, look to the definitions used in H2. The Commissioner has adopted by regulation similar tests for both, but the preliminary question of being a child does not in any way recognize or rely on questions of legitimacy. Turning briefly, however, to the second question of dependency, which under the statutory terms is framed in terms of legitimacy, although 402d3 uses the term legitimacy as the regulations are clear. The Commissioner has treated that term legitimate as a term of art and has defined it not by reference to State legitimacy law, but in fact by State antestasy law. And I think there can be no question as to the propriety of doing that. The Supreme Court itself was actually quite explicit in Matthews v. Lucas in footnote 17 that it was appropriate to define legitimate child for purposes of the dependency requirement by references to H2. And, of course, because they cannot meet the antestasy requirement of H2A and do not purport to meet the other requirements of H2, that same failure defeats their attempt to show dependency under the statute. I'm happy to address briefly the equal protection argument. It is obviously a novel one, and it's a little bit difficult to ascertain exactly what they challenge. If what they challenge is Arizona's ability to exclude posthumously conceived children from its antestasy scheme, something that is not clearly raised, I think it is a difficult argument to make. Numerous courts have recognized States' interest in speedy and efficient resolution of estates, something that is obviously cast into doubt when one recognizes the right of children conceived months or even years after the death of a decedent to take from that estate. If what they question is the right of the Commissioner and the Social Security Administration to rely on State antestasy law, I think that argument is clearly invalid under Matthews v. Lucas. If this Court has no further questions, we ask that the Court affirm. Thank you very much. Counsel? Your Honor, I have three points to make in rebuttal. First, contrary to what the government contends, the plaintiffs recognize there is a child component to the Act and assert that, of course, here we've satisfied the child component. Reading the Act liberally as it's intended to be construed, a child includes, as Your Honor observed, not only biological children, but also other types of children. With respect to section 416H2 and footnote 17 in Matthews, the Court noted that the purpose of that provision is to deem illegitimate children as legitimate children and therefore entitled to benefits. Were the two provisions adopted at the same time, E, E, and H? As far as I know, Your Honor, yes. With respect to the government's assertion that there's a survivorship provision under Arizona law, one statute that they're referring to is merely a simultaneous death act that addresses the common situation where two people die at the same time and therefore one cannot inherit from the other. And as I previously explained, of course, there is no explicit requirement in Arizona's after-born heir statute that a child be conceived prior to the time of death. The government raised the point that at the time the Arizona legislature was amending its statute, there was a provision that would allow after-born posthumously conceived children to inherit. However, at the time it was amending its statute, there was the assisted the status of Children of Assisted Conception Act, which actually explicitly precluded posthumously conceived children from intestate inheritance, and the legislature did not adopt it in that situation, unless the Court has any further questions. How long after death could a child be conceived and have the right to intestacy?  Once an estate has been distributed, you have either one year to challenge the distribution of the estate. In the alternative, if the estate has not yet been distributed, you have three years from the time of death. So this isn't a situation where children are going to be conceived and born 50 years down the line and then come and try to assert claims on an estate. There clearly is some type of cabining provision under Arizona intestacy law that prevents this type of situation. Let me just try once more to make sure I understand. Under your version of or your view of Arizona law, this would not be limited to either sperm bank would be an heir and eligible for benefits? No, Your Honor, that isn't what I'm advocating. Because Arizona law has a statute that allows anonymous sperm donors to be relieved from the obligations of parentage. And although it's not explicit in Arizona law, one would presume that that extends also to inheritance rights. It's an opt-out provision? Basically, that married sperm donors will be considered the natural parent, but anonymous sperm donors will not be, and they're exempted from all the duties of support. This is a support statute, a duties of support statute, but it explains that married parents who donate sperm through assisted conception will be considered the natural parents, but those anonymous sperm donors will not. In fact, the married father who may not be the sperm donor in that situation will be considered the natural parent. All right. If they sign a certificate that says they don't want to be considered for it, they don't want the child to have intestinal privileges? I think that's correct, Your Honor, that in order to disclaim the right to ‑‑ and if a married father who's not the sperm donor, is that what you're asking about, Your Honor? He's automatically presumed to be the natural father unless he puts in writing that he doesn't want that to be the case. Thank you. Thank you. The case just argued will be submitted. The Court will take a brief recess for the morning. A brief morning recess. Whatever you said. Thank you. Thank you. Thank you.
judges: B. Fletcher, Reinhardt, Restani